Hammer DeROBURT,
Plaintiff–Appellant,

v.

GANNETT CO., INC., a Delaware corporation, and Guam Publications, Inc., a Hawaii corporation, both dba Pacific Daily News, Defendants–Appellees.

No. 85–2888.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1987.

Decided Oct. 11, 1988.

Morton G. Rosen, Haight, Brown & Bonesteel, Santa Monica, Cal., for plaintiff-appellant.

John B. McCrory, Nixon, Hargrave, Devans & Doyle, Washington, D.C., for defendants-appellees.

Before CHAMBERS, SNEED and LEAVY,[*] Circuit Judges.

PER CURIAM:

This is a diversity libel action brought by Hammer DeRoburt, President of the Independent Republic of Nauru. Defendants are Gannett and its wholly owned subsidiary Guam Publications, Inc., publisher of Pacific Daily News.

The case was previously before us in *DeRoburt v. Gannett Co., Inc.*, 733 F.2d 701 (9th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985) (error for trial judge to deny motion for reconsideration where plaintiff's fourth amended complaint only minimally intruded into events involving the act of state doctrine). On remand the district court directed a verdict for the defendant Gannett and a jury found for defendant Guam Publications.

■ Plaintiff first contends that failure to give a jury instruction constitutes error. Defendants claimed a lack of constitutional malice in that there were credible sources of information for the published material. In the course of discovery, and contrary to the court's order, the defendants failed to disclose the sources of the publication. The news reporter, Francisco Uludong, who is not a defendant, claimed a constitutional privilege against disclosure. In 1982 the district court entered an order which provided that because of defendants' recalcitrance, defendants could not assert or attempt to prove the existence of any sources and that the jury would be instructed that it must presume there were none. The district court did not give that instruction.

The district court's original decision to instruct the jury that it must presume there were no sources was a sanctioning device. The initial article authored by Uludong was attributed to undisclosed sources. The record shows Uludong did not promptly disclose the sources to his employer, defendants Pacific Daily News, or to defense counsel. Approximately a month before the trial, plaintiff's trial counsel informed the defendant that one of the sources had died. Defense counsel was able to confirm that fact through the news reporter and confirmed the identity of the source. A few days before trial plaintiff's counsel claimed he knew the identity of the other source.

The record supports the defendant's contention that before and during trial, plaintiff's counsel chose to present his case in a manner inconsistent with a theory of no sources. In fact, the plaintiff himself introduced evidence at trial concerning the existence of and identities of the claimed sources, the defendant's refusal to disclose, and the circumstances of the defendant's ultimate confirmation of knowledge gained by the plaintiff through other means. The

---

[*] Judge Leavy was drawn to replace Judge Anderson now deceased. He has read the briefs, reviewed the record, and listened to the tapes of oral argument held April 14, 1987.

news reporter testified that Jerry Kramer was one of the sources. Plaintiff called Jerry Kramer who denied being a source. The jury apparently chose to believe the news reporter. Plaintiff did not request an instruction as contemplated by the court's earlier order. The court instructed the jury as follows:

In preparing the May 30, 1978 article that appeared in the Pacific Daily News, Cisco Uludong has testified in depositions and at this trial that he relied on two confidential sources. Contrary to this court's orders, defendant Guam Publications, Inc., and Cisco Uludong, until less than a month before trial, refused to reveal the identity of either of those sources. Mr. Uludong has now testified in this trial that one of those sources was Ernest Milne, who died shortly before Mr. Uludong decided to reveal that name as a source, and that the other source was Jerry Kramer. Because of Mr. Uludong's long delay in revealing his claimed sources and because of other circumstances surrounding his and defendant's earlier failure to identify these sources, about which you have received evidence, you may consider that delay and those facts and circumstances in evaluating Mr. Uludong's credibility as a witness. The effect that these considerations may have upon your evaluation of Mr. Uludong's credibility, and the weight you shall give to these circumstances, are entirely within your province to decide as judges of the facts and of the weight and effect of the evidence.

For the district court judge to then instruct the jury that it should conclusively presume that there were no sources would have been contrary to the evidence presented at trial by both parties and contrary to the truth.

Plaintiff next contends that it was error to direct a verdict in favor of defendant Gannett. Plaintiff had argued that Gannett, the parent company of defendant Guam Publications, could be liable under respondeat superior or agency theories. The district court judge held that there was no evidence in the record to justify going to the jury under either theory. We have been directed to nothing in the record which would support plaintiff's claims. We agree with the district court judge. Furthermore, since we conclude that defendant Guam Publications is not liable, the question of Gannett's vicarious liability is purely academic.

The matter of costs and attorneys' fees is not before us at this time. We direct that any appeal to this court with respect to costs and fees be referred to this panel. The judgment of the district court is affirmed.

CHAMBERS, Circuit Judge, concurring:

Here we have a sequel to our *DeRoburt v. Gannett Co., Inc.*, 733 F.2d 701 (1984).

I wish to make some comment on the accused newspaper stories that made this case. The reporter was the first small Pacific Islands native to be hired by a paper or papers with a large circulation. He had been apparently indoctrinated on the glories of our First Amendment, and the reporter's duty to even go to jail to protect his sources.

To me, it is the headlines, surely not written by the reporter Uludong, that made the litigation we have here.

It bears down on the Marshall Islands on the legality of the "loan" according to the Marshall Islands' laws. It seems to me the laws of Nauru were much more important. For example I suppose that each dollar sent by our government to the Contras offends the laws of Nicaragua under the Sandinistas.

My point is that while we have upheld a right in *DeRoburt* in our first opinion, exempting DeRoburt from the law of the "Act of State" doctrine, we have reached the outer limit in exempting rulers from the "Act of State", *and* the Supreme Court has denied certiorari, *Gannett Co., Inc., et al., v. DeRoburt*, 469 U.S. 1159, 105 S.Ct. 909, which makes "Round One" the law of the case, I think.

By saying the above, I do not mean to say our first opinion was an aberration. I

think it will fit a few other cases as they arise, but only a few.

This may be getting ahead too early, but considering the whole record, the jury did find on interrogatories that the news story was false, but found no malice. We can find no fault with the conclusions of the jury, and the parties do not argue here against the findings.

If I had a second vote on the Court as constituted, I would hold that the First Amendment and *New York Times v. Sullivan*, 469 U.S. 254, 84 S.Ct. 710, 7 L.Ed.2d 686 (1964) do not preclude a two dollar judgment in favor of the plaintiff.